**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NOEL UVALLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 09 C 3665 |
| v. | ) | |
| | ) | |
| LARRY DOMINICK, TOWN OF | ) | |
| CICERO, JAMES KLOSAK, and | ) | |
| DEREK DOMINICK, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On September 8, 2009, Plaintiff Noel Uvalle ('Uvalle") filed the present one-count

Amended Complaint against Defendant Town of Cicero ("Town of Cicero" or "Cicero"), as well

as Defendants Larry Dominick, James Klosak, and Derek Dominick ("Individual Defendants"),

alleging violations of his First Amendment rights. *See* 42 U.S.C. § 1983. Before the Court are

the Individual Defendants' and Cicero's Motions for Summary Judgment pursuant to Federal

Rule of Civil Procedure 56(c). For the following reasons, the Court grants in part and denies in

part Defendants' summary judgment motions. Specifically, the Court grants the Individual

Defendants' motion as to Defendants James Klosak and Derek Dominick and dismisses these

Defendants from this lawsuit. The Court denies Defendants' motions as to the Town of Cicero

and Larry Dominick, who remain Defendants in this lawsuit.[1]

---

[1] Because Uvalle presented sufficient evidence raising a genuine issue of material fact
for trial that Defendant Larry Dominick violated his First Amendment rights, there is a basis for
the Town of Cicero's liability. *See City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct.
1571, 89 L.Ed.2d 806 (1986); *Marion v. City of Corydon, Ind.,* 559 F.3d 700, 706 (7th Cir.
2009). In addition, Cicero did not argue that Uvalle failed to establish liability under the dictates

# BACKGROUND

## I. Northern District of Illinois Local Rule 56.1

Northern District of Illinois Local Rule 56.1 assists the Court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000). Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Cracco v. Vitran Exp., Inc.,* 559 F.3d 625, 632 (7th Cir. 2009). "The opposing party is required to file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." *Id.* (citing N.D. Ill. R. 56.1(b)(3)(B)). Also, Local Rule 56.1(b)(3)(C) requires the nonmoving party to present a separate statement of additional facts that require the denial of summary judgment. *See Ciomber v. Cooperative Plus, Inc.,* 527 F.3d 635, 643-44 (7th Cir. 2008). Pursuant to the Local Rules, the Court will not consider any additional facts proposed by Uvalle in his Local Rule 56.1(b)(3)(B) Response, but instead must rely on his Local Rule 56.1(b)(3)(C) Statement of Additional Facts when making factual determinations. *See id.* at 643; *see also Cichon v. Exelon Generation Co., L.L.C.,* 401 F.3d 803, 809 (7th Cir. 2005) ("Local Rule 56.1 *requires specifically* that a litigant seeking to oppose a motion for summary judgment file a response that contains a separate 'statement ... of any additional facts that require the denial of summary judgment.'") (emphasis in original).

---

of *Monell* in its summary judgment filings. *See Monell v. Department of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Meanwhile, the purpose of Rule 56.1 statements is to identify the relevant admissible evidence supporting the material facts, not to make factual or legal arguments. *See Cady v. Sheahan,* 467 F.3d 1057, 1060 (7th Cir. 2006) ("statement of material facts did [] not comply with Rule 56.1 as it failed to adequately cite the record and was filled with irrelevant information, legal arguments, and conjecture"). Further, the Court may disregard statements and responses that do not properly cite to the record. *See Cichon,* 401 F.3d at 809-10; *see also Raymond v. Ameritech Corp.,* 442 F.3d 600, 604 (7th Cir. 2006) ("district courts are entitled to expect strict compliance with Local Rule 56.1"). With these standards in mind, the Court turns to the relevant facts of this case.

## II.     Relevant Facts

### A.     Parties

The Town of Cicero employed Uvalle from May 2005 until March 2009. (R. 82, Defs.' Rule 56.1 Stmt. Facts ¶ 1.) Uvalle began his employment with Cicero in the Auxiliary Police Department and ultimately worked his way up to the Water Department where he was an inspector for approximately two and a half years until Cicero terminated his employment in March 2009. (*Id.*) Larry Dominick ("Dominick") was initially elected Cicero's Town President in 2005. (*Id.* ¶ 2.) In addition to his position as Town President, Dominick is the head of the political organization known as the Cicero Voters Alliance ("CVA"). (*Id.*; R. 92, Pl.'s Rule 56.1 Stmt. Facts ¶ 65.) James Klosak ("Klosak") has been Cicero's Inspector General since February 2007. (Defs.' Stmt. Facts ¶ 3.) As Inspector General, Klosak is responsible for investigating allegations of wrongdoing by Cicero employees. (*Id.*) Defendant Derek Dominick ("Derek"), who is the son of Cicero's President Larry Dominick, is Cicero's Director of Human Resources

and has held that position since March 2006.  (*Id*. ¶¶ 5, 6.)  As Director of Human Resources, Derek is responsible for handling attendance, payroll, the employee retirement fund, employee health and life insurance benefits, and personnel complaints.  (*Id*. ¶ 5.)  Derek is a member of the CVA and is a political supporter of his father, Larry Dominick.  (*Id*. ¶ 6.)

### B.    Town of Cicero's February 2009 Election

From May 2005 until January 2009, Uvalle supported Dominick as Town President and was an active CVA member.  (*Id*. ¶¶ 7, 8.)  The 2009 Cicero municipal election in which Dominick sought reelection as Town President was scheduled to take place on February 24, 2009.  (*Id*. ¶ 9.)  President Dominick's opponent in this election was Cicero Police Officer Roberto Garcia.  (*Id*. ¶ 10.)  On or around February 11, 2009, Uvalle began to support Garcia for Town President, although he had attended a December 2008 kick-off event for Garcia to see what Garcia had to offer the Town of Cicero.  (*Id*. ¶ 11; Pl.'s Stmt. Facts ¶ 64.)

The parties dispute whether Dominick stated at a December 2008 CVA meeting that anyone who did not support the team should look for another job and that he would find out about it and get rid of them.  (Defs.' Stmt. Facts ¶¶ 21, 22; Pl.'s Stmt. Facts ¶¶ 66, 67.)  It is not disputed, however, that Dominick talked to CVA volunteer, Alex Rueda, about working on Garcia's side to get information.  (Pl.'s Stmt. Facts ¶ 68; Defs.' Ex. 2, Dominick Dep., at 38-39.)  Sometime thereafter, Uvalle felt that he was being targeted and harassed, and thus in February 2009, he decided to actively campaign for Garcia.  (Pl.'s Stmt. Facts ¶ 75.)  To that end, Uvalle worked for Garcia at the polling place at Precinct 36 on election day.  (*Id*. ¶ 77.)  Uvalle testified that outside of the polling place on that date, two Cicero employees, who were also CVA members, confronted him and told him that he would be fired for supporting Garcia.  (*Id*.)

On the day after the election, Uvalle took a personal day off from work and maintains that he received a telephone call from Chantal Butler, a Water Department employee, telling him that he needed to turn in his work keys. (*Id.*) The parties dispute, however, whether another Cicero employee, David Duran, told Uvalle to turn in his work keys. (*Id.*)

**C.     Uvalle's Termination**

In January 2009, General Inspector Klosak began an investigation into Uvalle's accountability during the work day. (Defs.' Stmt. Facts ¶ 35.) More specifically, Klosak conducted a GPS and visual surveillance of Uvalle's whereabouts during work and it is undisputed that, pursuant to his investigation, Klosak discovered that Uvalle spent time at home during the work day. (*Id.* ¶¶ 36, 37.) Indeed, Uvalle admits that he spent time at home on at least three separate occasions in January 2009 and that he is not aware of any other employee in the Water Department who was allowed to stay home during the work day more than the allotted time for a lunch break. (*Id.* ¶¶ 40-43.)

On March 10, 2009, a meeting took place between Uvalle and Klosak regarding Klosak's investigation. (*Id.* ¶ 38.) During this meeting, Klosak informed Uvalle that he had been under investigation for noncriminal conduct. (*Id.*) It is undisputed that during the March 10, 2009 meeting, Uvalle admitted to spending time at home during the work day. (*Id.* ¶ 39.) Also, Klosak questioned Uvalle about his failure to sign in and out pursuant to a Water Department procedure. (*Id.* ¶ 44.) Klosak then informed Uvalle that he could either resign or be placed on immediate suspension pending termination. (*Id.* ¶ 46.) Uvalle did not resign after which Klosak gave him a Notice of Immediate Administrative Leave without pay. (*Id.* ¶ 47.)

After the March 10, 2009 meeting, Klosak prepared an investigative summary and

recommended Uvalle's termination based on the time he spent at home during the work day. (*Id.* ¶ 49.) Klosak also based his termination recommendation on Uvalle's failure to follow sign-in procedures required for certain Cicero Water Department personnel. (*Id.* ¶¶ 32-34; Pl.'s Stmt. Facts ¶ 75.) Uvalle, however, disputes that he was required to follow any such sign-in procedures. (Pl.'s Stmt. Facts ¶ 74.) In any event, Klosak provided his investigative summary to Cicero's legal department. (Defs.' Stmt. Facts ¶ 50.) Thereafter, Larry Dominick, as Town President, decided to terminate Uvalle's employment. (*Id.* ¶¶ 56, 57; Pl.'s Stmt. Facts ¶ 83.) On March 26, 2009, Uvalle and Klosak met at which time Klosak told Uvalle that the Town of Cicero was terminating his employment. (Defs.' Stmt. Facts ¶ 59.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S.

at 255 (quotation omitted); *see also* Fed.R.Civ.P. 56(e)(2) (requiring adverse party to "set out specific facts").

## ANALYSIS

In his Amended Complaint, Uvalle alleges a First Amendment claim. Although the parties characterize Uvalle's claim as a retaliation claim, the Seventh Circuit has recently "cautioned against use of the term 'retaliation' to describe cases in which an employer has punished an employee for protected speech, noting that infringement on First Amendment rights occurs both when employers deter future speech as well as when they punish past speech." *Kodish v. Oakbrook Terrace Fire Protection Dist.*, 604 F.3d 490, 501 n.9 (7th Cir. 2010) (citing *Fairley v. Andrews,* 578 F.3d 518, 525 (7th Cir. 2009)). Thus, based on the Seventh Circuit's guidance and the facts in this case, the Court construes Uvalle's claim as a First Amendment political affiliation claim.

It is well-established "that governments may not base employment decisions such as promotions, transfers, and recalls for low-level employees on political affiliation or support; to do so would be an impermissible infringement on the public employees' First Amendment rights." *Moss v. Martin,* 614 F.3d 707, 709 (7th Cir. 2010); *see also Kiddy-Brown v. Blagojevich,* 408 F.3d 346, 357, 359 (7th Cir. 2005). In analyzing First Amendment political affiliation claims, a plaintiff must establish three elements: (1) the employee's speech was constitutionally protected; (2) the employee suffered an actionable deprivation because of his employer's adverse action; and (3) but-for the protected speech, the employer would not have taken the same adverse employment action. *See Kodish,* 604 F.3d at 501 (citing *Gross v. FBL Fin. Serv., Inc.,* ___ U.S. ___, 129 S.Ct. 2343, 2351, 174 L.Ed.2d 119 (2009)); *see also Gunville,* 583 F.3d at 983-84.

For purposes of their summary judgment motion, Defendants concede that Uvalle has fulfilled the first and second elements of his political affiliation claim. Defendants, however, maintain that Uvalle has not established that his political affiliation was the but-for factor in the Town of Cicero's termination decision, and thus Uvalle's First Amendment claim must fail.

## I. Knowledge

Defendants first argue that Uvalle has not demonstrated that the Individual Defendants had the requisite knowledge of Uvalle's political affiliation in the first instance. *See Zerante v. DeLuca*, 555 F.3d 582, 585 (7th Cir. 2009) (threshold question is whether defendants knew of political activities); *see also Gunville,* 583 F.3d at 984 (same). Viewing the facts and all reasonable inferences in Uvalle's favor – as the Court is required to do at this procedural posture – Uvalle has raised a genuine issue of material fact for trial that Town President Dominick was aware that Uvalle supported Garcia in the February 2009 election. In particular, evidence reveals that Dominick, the head of the CVA, told CVA members at a December 2008 meeting that if he found out any Cicero employees supported the other side in the February 2009 election, the employee should look for another job and that Dominick would find out about it. Dominick also admitted that he talked to CVA volunteer Rueda about working on Garcia's side to get some information. In addition, Uvalle testified that CVA members were at the February 11, 2009 Garcia meeting that Uvalle attended. (Defs.' Ex. 1, Uvalle Dep., at 82-83.) There is additional evidence in the record that certain CVA members knew that Uvalle had worked on Garcia's campaign. (*See* Pl.'s Stmt. Facts ¶ 77.) Based on these facts and all reasonable inferences construed in Uvalle's favor, there is a genuine issue of material fact for trial that Dominick was aware of Uvalle's political affiliation, namely, that Uvalle supported Garcia for Town President in

the February 2009 election.

On the other hand, there is undisputed evidence in the record that Derek Dominick did not have knowledge of Uvalle's political support of Garcia. (Defs.' Stmt. Facts ¶ 30.) Further, Uvalle has failed to present sufficient evidence raising a genuine issue of material fact for trial that the remaining Individual Defendant, General Inspector James Klosak, knew that Uvalle politically supported Garcia. (*See id.* ¶¶ 26, 28, 29, 39.) Because Uvalle has failed to establish the threshold question of whether Klosak and Derek Dominick knew of his political support of Garcia, the Court dismisses Defendants Klosak and Derek Dominick from this lawsuit. *See Zerante,* 555 F.3d at 585; *Gunville,* 583 F.3d at 984.

## II.     But-for Causation

Next, Defendants argue that even if one or all of the Individual Defendants knew of Uvalle's political affiliation, Uvalle's First Amendment claim must nevertheless fail because Uvalle he has not established his political affiliation was the but-for cause of Defendants' decision to terminate his employment. *See Gross,* 129 S.Ct. at 2351. Under *Gross* and its progeny, at trial Uvalle must establish but-for his political affiliation, Defendants would not have fired him. *See Gunville,* 583 F.3d at 983-84; *Fairley,* 578 F.3d at 525-26. As the *Fairley* decision clarifies, *Gross* provides that "demonstrating but-for causation is part of the plaintiff's burden in all suits under federal law." *Id.* at 526. At summary judgment, however, a plaintiff need only present evidence "from which a reasonable jury could find causation; no more is necessary at this stage, but the instructions at trial must reflect the holding of *Gross.*" *Id.* Simply put, "at the summary judgment stage, the plaintiff simply must show that there is evidence from which a reasonable jury could find causation." *McDonough v. City of Chicago,* ___ F.Supp.2d ___, 2010

WL 3894239, at *9 (N.D. Ill. Sept. 29, 2010).

Here, Uvalle seeks to establish his political retaliation claim through the direct method of proof that does not require a burden shifting, pretext analysis. *See Kodish,* 604 F.3d at 501. "Under the direct method, the plaintiff survives summary judgment if he can demonstrate 'triable issues as to whether discrimination motivated the adverse employment action.'" *Id.* (quoting *Darchak v. City of Chicago Bd. of Educ.,* 580 F.3d 622, 631 (7th Cir. 2009). "The focus of the direct method of proof thus is not whether the evidence offered is 'direct' or 'circumstantial' but rather whether the evidence 'points directly' to a discriminatory reason for the employer's action." *Atanus v. Perry,* 520 F.3d 662, 671 (7th Cir. 2008). As the Seventh Circuit explains, "[d]irect evidence would be an admission by the decisionmaker that the adverse employment action was motivated by discriminatory animus," and "[s]uch admissions are understandably rare." *Darchak,* 580 F.3d at 631. Circumstantial evidence, however, is less rare and often includes evidence of "suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group." *Id.; see also Van Antwerp v. City of Peoria, Ill.,* 627 F.3d 295, 298 (7th Cir. 2010) ("Circumstantial evidence can take many forms, including []suspicious timing.").

In opposition to Defendants' summary judgment motions, Uvalle has presented evidence from which a jury could reasonably find that the Town of Cicero and Dominick terminated his employment based on his political affiliation due to the suspicious timing of his termination and CVA members' statements and behavior. More specifically, considering the facts and all reasonable inferences in Uvalle's favor, he has presented evidence that certain members of the CVA, including Dominick, knew he was supporting Garcia and that after the February 2009

election, CVA members told him he would be fired for supporting Garcia. Also, there is evidence in the record that the day after the election, Uvalle was told to turn in his work keys. Meanwhile, less than two weeks after the election, the Town of Cicero placed Uvalle on unpaid administrative leave. Approximately a month after the election, Cicero terminated Uvalle's employment. There is also evidence in the record that the investigation into his workplace misconduct started after Uvalle attended a Garcia event in December 2008 and continued through February 2009 when Uvalle unequivocally supported Garcia for Town President. Based on the suspicious timing involved in Uvalle's termination and the investigation into his misconduct – along with the conduct and statements of CVA members and Dominick – Uvalle has presented sufficient circumstantial evidence that Defendants terminated his employment based on his political affiliation. *See Van Antwerp,* 627 F.3d at 298. Because Uvalle has presented evidence from which a reasonable jury could find causation, he has met his burden at this stage of the proceedings. *See Fairley,* 578 F.3d at 526.

## III.    Qualified Immunity

Finally, the Individual Defendants argue that qualified immunity shields them from liability. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In determining whether the Individual Defendants are entitled to qualified immunity, the Court must decide whether: (1) the facts as alleged make out a violation of a constitutional right; and (2) that right was clearly established at the time of the Individual Defendants' misconduct. *See Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Because there is a genuine issue of material fact for trial whether Larry Dominick violated Uvalle's First Amendment right, the Court turns to the second *Saucier* prong, namely, whether Uvalle's right

was clearly established at the time of the alleged misconduct.

A plaintiff may defeat a qualified immunity defense by pointing "to a clearly analogous case establishing a right to be free from the specific conduct at issue" or by showing that "the conduct is so egregious that no reasonable person could have believed that it would not violate clearly established rights." *Wheeler v. Lawson,* 539 F.3d 629, 640 (7th Cir. 2008) (citations omitted). The Supreme Court has rejected the notion that analogous cases must be exactly the same before an official is on notice that his conduct was unconstitutional. *See Hope v. Pelzer,* 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). Instead, the standard is that a "plaintiff must show, on some level, that a violation of this right has been found in factually similar cases, or that the violation was so clear that a government official would have known that his actions violated the plaintiff's rights even in the absence of a factually similar case." *Lee v. Young,* 533 F.3d 505, 512 (7th Cir. 2008).

In general, "public employees may not be made to suffer adverse job actions because of their political beliefs." *Carlson v. Gorecki,* 374 F.3d 461, 464 (7th Cir. 2004) (citing *Rutan v. Republican Party of Ill.,* 497 U.S. 62, 79, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990)). As the Supreme Court in *Rutan* explained over twenty years ago, "[u]nder our sustained precedent, conditioning hiring decisions on political belief and association plainly constitutes an unconstitutional condition, unless the government has a vital interest in doing so." *Id.* at 78; *see also Zerante v. DeLuca,* 555 F.3d 582, 584-85 (7th Cir. 2009) ("First Amendment protects a person from being removed from public employment for purely political reasons, with certain exceptions for policymaking positions and employees having a confidential relationship with a superior."). Because it is clearly established that an employee – who is not in a policymaking

position like Uvalle – cannot be discharged on the basis of his political affiliation, the Individual

Defendants' qualified immunity arguments fail. *See Kiddy-Brown v. Blagojevich,* 408 F.3d 346,

357, 359 (7th Cir. 2005).

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the Individual

Defendants' and the Town of Cicero's Motions for Summary Judgment brought pursuant to

Federal Rule of Civil Procedure 56(c).

**Date:** February 10, 2010

**ENTERED**

_____
**AMY J. ST. EVE**
**United States District Court Judge**